1
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
2
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
3
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
4
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
5
Los Angeles, California 90067
Telephone: (310) 201-9150
6
Facsimile: (310) 201-9160

7
*Counsel for Plaintiff*

8
[Additional Counsel on Signature Page]

9
### UNITED STATES DISTRICT COURT

10
### SOUTHERN DISTRICT OF CALIFORNIA

11

12
MIKA BAGHERI, Individually and On
Behalf of All Others Similarly Situated,

13
         Plaintiff,

14
         v.

15
DERMTECH, INC., JOHN DOBAK,
16
and KEVIN SUN,

17
         Defendants.

18

Case No.   **'23 CV 1885 DMS JLB**

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS**

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

Plaintiff Mika Bagheri ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by DermTech, Inc. ("DermTech" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by DermTech; and (c) review of other publicly available information concerning DermTech.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired DermTech securities between May 3, 2022 and November 3, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      DermTech is a molecular diagnostic company that develops and markets non-invasive genomics test to aid the diagnosis and management of skin cancer, inflammatory skin diseases, and aging-related skin conditions. The DermTech Melanoma Test ("DMT") is a commercial test offered to assess pigmented skin lesions for melanoma.

3.      On August 8, 2022, after the market closed, DermTech announced its second quarter 2022 financial results and revealed that the Company expected "a lower average selling price (ASP) for [its] DMT," due to "Medicare billing code edits . . . as well as less favorable collection patterns from commercial payors." On this news, the Company's stock price fell $2.87, or 34%, to close at $5.56 per share on August 9, 2022, on unusually heavy trading volume.

4.      Then, on November 3, 2022, after the market closed, DermTech announced its third quarter 2022 financial results, reporting that billable sample

volume "sequential growth was flat due to headwinds caused by limited commercial payer coverage." The Company attributed the disappointing growth to "commercial payer collection challenges [have] affect[ed] estimating ASP [average selling price]." As a result, DermTech expected "at least $13 million in assay revenue for the full-year 2022," which is "below [its] previous guidance range."

5.     On this news, the Company's stock price fell $1.34, or 44.7%, to close at $1.66 per share on November 4, 2022, on unusually heavy trading volume.

6.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company experienced challenges with collections from commercial payors; (2) that, as a result, there was a lower average selling price for DermTech's DMT; (3) that, as a result of the foregoing, the Company's revenue growth would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this

Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

11.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.    Plaintiff Mika Bagheri, as set forth in the accompanying certification, incorporated by reference herein, purchased DermTech securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.    Defendant DermTech is incorporated under the laws of Delaware with its principal executive offices located in La Jolla, California. DermTech's common stock trades on the NASDAQ exchange under the symbol "DMTK."

14.    Defendant John Dobak ("Dobak") was the Chief Executive Officer ("CEO") of DermTech at all relevant times.

15.    Defendant Kevin Sun ("Sun") was the Chief Financial Officer ("CFO") at DermTech at all relevant times.

16.    Defendants Dobak and Sun (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to

material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17. DermTech is a molecular diagnostic company that develops and markets non-invasive genomics test to aid the diagnosis and management of skin cancer, inflammatory skin diseases, and aging-related skin conditions. The DermTech Melanoma Test ("DMT") is a commercial test offered to assess pigmented skin lesions for melanoma.

### Materially False and Misleading
### Statements Issued During the Class Period

18. The Class Period begins on May 3, 2022. On that day, DermTech announced its first quarter 2022 financial results in a press release that stated, in relevant part:

First-Quarter 2022 Financial Results

- Billable sample volume grew 53 percent from the first quarter of 2021 to approximately 14,370.

- Assay revenue was $3.5 million, up 61 percent from the first quarter of 2021, primarily due to higher billable sample volume.

- Total revenue was $3.7 million, a 47 percent increase from the first quarter of 2021, driven by higher assay revenue.

\*      \*      \*

2022 Outlook

The Company affirmed its full-year 2022 outlook for assay revenue between $22 million and $26 million.

19. The above statements identified in ¶ 18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's

business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company experienced challenges with collections from commercial payors; (2) that, as a result, there was a lower average selling price for DermTech's DMT; (3) that, as a result of the foregoing, the Company's revenue growth would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

20.    The truth began to emerge on August 8, 2022, after the market closed, when DermTech issued a press release announcing its second quarter 2022 financial results and revealed that the Company expected "a lower average selling price (ASP) for [its] DMT," due to "Medicare billing code edits . . . as well as less favorable collection patterns from commercial payors." On this news, the Company's stock price fell $2.87, or 34%, to close at $5.56 per share on August 9, 2022, on unusually heavy trading volume.

21.    The August 8, 2022 press release also stated that the "Company updated its full-year 2022 outlook for assay revenue and now expects between $16 million and $19 million." It also reported the following second quarter 2022 financial results:

- Billable sample volume grew 56 percent from the second quarter of 2021 to approximately 18,320.

- Assay revenue was $4.1 million, up 43 percent from the second quarter of 2021, primarily due to higher billable sample volume.

- Total revenue was $4.2 million, a 36 percent increase from the second quarter of 2021, driven by higher assay revenue.

- Cost of assay revenue was $3.2 million, a 24 percent increase from the second quarter of 2021, yielding an assay gross margin of 22%, compared to 11% for the second quarter of 2021.

22.    The above statements identified in ¶ 21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company experienced challenges with collections from

commercial payors; (2) that, as a result, there was a lower average selling price for DermTech's DMT; (3) that, as a result of the foregoing, the Company's revenue growth would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

23.     On November 3, 2022, after the market closed, DermTech issued a press release announcing its third quarter 2022 financial results, in which the Company reported that billable sample volume "sequential growth was flat due to headwinds caused by limited commercial payer coverage." The press release continued that "commercial payer collection challenges [have] affect[ed] estimating ASP [average selling price]," and as a result, DermTech expected "at least $13 million in assay revenue for the full-year 2022," which is "below [its] previous guidance range." Specifically, DermTech stated, in relevant part:

 "We achieved meaningful year-over-year billable sample volume growth, but *sequential growth was flat due to headwinds caused by limited commercial payer coverage*," said John Dobak, M.D., CEO, DermTech. "Despite these challenges, we have more positive activity with payers now than we've ever had and are confident we're on the path to meaningfully growing covered lives in the U.S. We remain closely engaged with commercial payers and believe that we'll potentially add 30 to 40 million covered lives by the end of the first quarter of 2023. We've recently executed an agreement with a large regional payer and have received an excellent policy from a prominent laboratory benefits manager. We've also completed price negotiations with a national government payer that runs the largest integrated health care system in the U.S. We've spent productive time with national payer medical directors and have several scheduled comprehensive reviews with medical policy teams in the upcoming months, which we see as additional, important potential business catalysts."

Dr. Dobak continued, "We believe the value proposition of our DermTech Melanoma Test (DMT) continues to be embraced by our customers, but *growth in utilization with certain customers is tempered because of typical payor tactics to impede our adoption momentum. Due to these factors, we expect to finish 2022 below our previous guidance range. It's difficult to provide a revised forecast due to commercial payer collection challenges which affect estimating ASP and the potential for additional changes in estimates for anticipated cash collections, but we do expect to achieve at least $13 million in assay revenue for the full-year 2022.*"

\*      \*      \*

**Third-Quarter 2022 Financial Results**

•Billable sample volume grew 54 percent from the third quarter of 2021 to approximately 18,080.

•Assay revenue was $3.4 million, up 16 percent from the third quarter of 2021, primarily due to higher billable sample volume.

•Total revenue was $3.6 million, an 18 percent increase from the third quarter of 2021, driven by higher assay revenue.

24.     On this news, the Company's stock price fell $1.34, or 44.7%, to close at $1.66 per share on November 4, 2022, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired DermTech securities between May 3, 2022 and November 3, 2022, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, DermTech's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of DermTech shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by DermTech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of DermTech; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31.     The market for DermTech's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, DermTech's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired DermTech's securities relying upon the integrity of

1   the market price of the Company's securities and market information relating to
2   DermTech, and have been damaged thereby.

3         32.    During the Class Period, Defendants materially misled the investing
4   public, thereby inflating the price of DermTech's securities, by publicly issuing false
5   and/or misleading statements and/or omitting to disclose material facts necessary to
6   make Defendants' statements, as set forth herein, not false and/or misleading. The
7   statements and omissions were materially false and/or misleading because they failed
8   to disclose material adverse information and/or misrepresented the truth about
9   DermTech's business, operations, and prospects as alleged herein.

10         33.    At all relevant times, the material misrepresentations and omissions
11   particularized in this Complaint directly or proximately caused or were a substantial
12   contributing cause of the damages sustained by Plaintiff and other members of the
13   Class.  As described herein, during the Class Period, Defendants made or caused to
14   be made a series of materially false and/or misleading statements about DermTech's
15   financial well-being and prospects.  These material misstatements and/or omissions
16   had the cause and effect of creating in the market an unrealistically positive
17   assessment of the Company and its financial well-being and prospects, thus causing
18   the Company's securities to be overvalued and artificially inflated at all relevant
19   times.  Defendants' materially false and/or misleading statements during the Class
20   Period resulted in Plaintiff and other members of the Class purchasing the Company's
21   securities at artificially inflated prices, thus causing the damages complained of herein
22   when the truth was revealed.

23                                 **LOSS CAUSATION**

24         34.    Defendants' wrongful conduct, as alleged herein, directly and
25   proximately caused the economic loss suffered by Plaintiff and the Class.

26         35.    During the Class Period, Plaintiff and the Class purchased DermTech's
27   securities at artificially inflated prices and were damaged thereby.  The price of the
28   Company's securities significantly declined when the misrepresentations made to the

1  market, and/or the information alleged herein to have been concealed from the market,
2  and/or the effects thereof, were revealed, causing investors' losses.

3  **SCIENTER ALLEGATIONS**

4      36.    As alleged herein, Defendants acted with scienter since Defendants knew
5  that the public documents and statements issued or disseminated in the name of the
6  Company were materially false and/or misleading; knew that such statements or
7  documents would be issued or disseminated to the investing public; and knowingly
8  and substantially participated or acquiesced in the issuance or dissemination of such
9  statements or documents as primary violations of the federal securities laws.  As set
10  forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt
11  of information reflecting the true facts regarding DermTech, their control over, and/or
12  receipt and/or modification of DermTech's allegedly materially misleading
13  misstatements and/or their associations with the Company which made them privy to
14  confidential proprietary information concerning DermTech, participated in the
15  fraudulent scheme alleged herein.

16  **APPLICABILITY OF PRESUMPTION OF RELIANCE**
17  **(FRAUD-ON-THE-MARKET DOCTRINE)**

18      37.    The market for DermTech's securities was open, well-developed and
19  efficient at all relevant times.  As a result of the materially false and/or misleading
20  statements and/or failures to disclose, DermTech's securities traded at artificially
21  inflated prices during the Class Period.  On May 3, 2022, the Company's share price
22  closed at a Class Period high of $9.47 per share. Plaintiff and other members of the
23  Class purchased or otherwise acquired the Company's securities relying upon the
24  integrity of the market price of DermTech's securities and market information relating
25  to DermTech, and have been damaged thereby.

26      38.    During the Class Period, the artificial inflation of DermTech's shares
27  was caused by the material misrepresentations and/or omissions particularized in this
28  Complaint causing the damages sustained by Plaintiff and other members of the Class.

As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about DermTech's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of DermTech and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39.     At all relevant times, the market for DermTech's securities was an efficient market for the following reasons, among others:

(a)     DermTech shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, DermTech filed periodic public reports with the SEC and/or the NASDAQ;

(c)     DermTech regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     DermTech was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40.     As a result of the foregoing, the market for DermTech's securities promptly digested current information regarding DermTech from all publicly available sources and reflected such information in DermTech's share price. Under

1    these circumstances, all purchasers of DermTech's securities during the Class Period

2    suffered similar injury through their purchase of DermTech's securities at artificially

3    inflated prices and a presumption of reliance applies.

4         41.    A Class-wide presumption of reliance is also appropriate in this action

5    under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*,

6    406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on

7    Defendants' material misstatements and/or omissions.  Because this action involves

8    Defendants' failure to disclose material adverse information regarding the Company's

9    business operations and financial prospects—information that Defendants were

10   obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All

11   that is necessary is that the facts withheld be material in the sense that a reasonable

12   investor might have considered them important in making investment decisions.

13   Given the importance of the Class Period material misstatements and omissions set

14   forth above, that requirement is satisfied here.

## NO SAFE HARBOR

16        42.    The statutory safe harbor provided for forward-looking statements under

17   certain circumstances does not apply to any of the allegedly false statements pleaded

18   in this Complaint. The statements alleged to be false and misleading herein all relate

19   to then-existing facts and conditions. In addition, to the extent certain of the

20   statements alleged to be false may be characterized as forward looking, they were not

21   identified as "forward-looking statements" when made and there were no meaningful

22   cautionary statements identifying important factors that could cause actual results to

23   differ materially from those in the purportedly forward-looking statements. In the

24   alternative, to the extent that the statutory safe harbor is determined to apply to any

25   forward-looking statements pleaded herein, Defendants are liable for those false

26   forward-looking statements because at the time each of those forward-looking

27   statements was made, the speaker had actual knowledge that the forward-looking

28   statement was materially false or misleading, and/or the forward-looking statement

was authorized or approved by an executive officer of DermTech who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

43.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase DermTech's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for DermTech's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about DermTech's financial well-being and prospects, as specified herein.

47.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of DermTech's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about DermTech and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts

were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing DermTech's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of DermTech's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired DermTech's securities during the Class Period at artificially high prices and were damaged thereby.

51. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that DermTech was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their DermTech securities, or, if they had acquired

1  such securities during the Class Period, they would not have done so at the artificially
2  inflated prices which they paid.

3      52.    By virtue of the foregoing, Defendants violated Section 10(b) of the
4  Exchange Act and Rule 10b-5 promulgated thereunder.

5      53.    As a direct and proximate result of Defendants' wrongful conduct,
6  Plaintiff and the other members of the Class suffered damages in connection with
7  their respective purchases and sales of the Company's securities during the Class
8  Period.

9                          **SECOND CLAIM**
10            **Violation of Section 20(a) of The Exchange Act**
11                  **Against the Individual Defendants**

12      54.    Plaintiff repeats and re-alleges each and every allegation contained
13  above as if fully set forth herein.

14      55.    Individual Defendants acted as controlling persons of DermTech within
15  the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their
16  high-level positions and their ownership and contractual rights, participation in,
17  and/or awareness of the Company's operations and intimate knowledge of the false
18  financial statements filed by the Company with the SEC and disseminated to the
19  investing public, Individual Defendants had the power to influence and control and
20  did influence and control, directly or indirectly, the decision-making of the Company,
21  including the content and dissemination of the various statements which Plaintiff
22  contends are false and misleading. Individual Defendants were provided with or had
23  unlimited access to copies of the Company's reports, press releases, public filings,
24  and other statements alleged by Plaintiff to be misleading prior to and/or shortly after
25  these statements were issued and had the ability to prevent the issuance of the
26  statements or cause the statements to be corrected.

27      56.    In particular, Individual Defendants had direct and supervisory
28  involvement in the day-to-day operations of the Company and, therefore, had the

power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, DermTech and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

1  DATED: October 15, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GLANCY PRONGAY & MURRAY LLP**

By:  _/s/ Pavithra Rajesh_

Robert V. Prongay
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

_Attorneys for Plaintiff Mika Bagheri_

## SWORN CERTIFICATION OF PLAINTIFF

## DERMTECH, INC. SECURITIES LITIGATION

I, Mika Bagheri, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the DermTech, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in DermTech, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

10/13/2023

_____
Date

_____
Mika Bagheri

**Mika Bagheri's Transactions in DermTech, Inc. (DMTK)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/14/2022 | Bought | 100 | $4.4800 |
| 6/14/2022 | Bought | 8 | $4.4800 |