Sean T. Prosser (SBN 163903)
stprosser@mintz.com
Jennifer YoonJee Kim (SBN 318804)
jkim@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:    (858) 314-1501

Patrick E. McDonough (*Pro Hac Vice* application forthcoming)
pemcdonough@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Telephone:  (617) 542-6000

Attorneys for Defendants
JOHN DOBAK AND KEVIN SUN

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DERMTECH, INC. SECURITIES LITIGATION | Case No. 3:23-cv-01885-DMS-JLB |
| | **REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | DATE:       October 25, 2024 |
| | TIME:        1:30 p.m. |
| | CTRM.:     13A |
| | JUDGE:    Hon. Dana M. Sabraw |

# TABLE OF CONTENTS

Page

I.    ARGUMENT ............................................................................................................ 1

    A.    Plaintiff's Allegations Fail to Support a Strong Inference of Scienter ............................................................................................................ 1

        1.    Defendants Did Not Offer Contradictory Explanations ............. 1

        2.    The Minimal Stock Sale Allegations Do Not Support Scienter ......................................................................................... 2

        3.    Plaintiff's Newly-Asserted Core Operations Theory Fails ........ 3

        4.    The Former Employees' Allegations Lack Any Particularized Facts Regarding Defendants' Access to Information ................................................................................... 4

        5.    Plaintiff Fails to Properly Plead a Motive to Meet Analysts' Expectations. .............................................................. 5

        6.    Defendants' SOX Certifications Are Not Probative of Scienter. ...................................................................................... 6

        7.    Plaintiff's Remaining Arguments Fail to Support a Strong Inference of Scienter ...................................................... 6

        8.    The CAC Otherwise Offers No Holistic View of Scienter ........ 7

    B.    The CAC is Devoid of Well-Pleaded Allegations of Falsity ................ 8

        1.    Plaintiff Asserts No Well-Pleaded Allegations that the Final Medicare LCD Statements Were False When Made ......... 8

        2.    Defendants' Statements Regarding "Main Drivers" Did Not Create an Impression Materially Different From Reality ......................................................................................... 9

        3.    Statements Concerning the 2022 Reclassification and the Downward Revenue Adjustment Were Not False .................... 10

II.    CONCLUSION ..................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..................................................................................9, 10

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ...............................................................................6

*In re Affirm Holdings, Inc. Sec. Litig.*,
2024 U.S. Dist. LEXIS 152940 (N.D. Cal. Aug. 26, 2024) ................................5

*In re Fastly, Inc. Sec. Litig.*,
2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) .................................................3, 4

*In re Ramp Networks, Inc. Sec. Litig.*,
201 F. Supp. 2d 1051 (N.D. Cal. 2002).............................................................10

*In re Silicon Graphics Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ...............................................................................3

*In Re Vantive Corp. Sec. Litig.*,
110 F. Supp. 2d 1209 (N.D. Cal. 2000), *aff'd*, 283 F.3d 1079 (9th
Cir. 2002) ........................................................................................................8, 9

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .............................................................................5

*Lowe v. Tandem Diabetes Care Inc.*,
2024 U.S. Dist. LEXIS 79006 (S.D. Cal. Apr. 29, 2024) ...................................8

*M&M Hart Living Trust v. Glob. Eagle Entm't, Inc.*,
2017 U.S. Dist. LEXIS 222201 (C.D. Cal. Aug. 20, 2017) ...............................6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) .............................................................................3

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ...............................................................................4

ii

*Sharenow v. Impac Mortg. Holdings*,
    385 Fed. Appx. 714 (9th Cir. 2010) ........................................................................7

*Smilovits v. First Solar, Inc.*,
    2019 U.S. Dist. LEXIS 221424 (D. Ariz. Dec. 27, 2019) ....................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..............................................................................................7

*Victor J. NG v. Berkeley Lights, Inc.*,
    2024 U.S. Dist. LEXIS 28776 (N.D. Cal. Feb. 20, 2024) ...............................8, 9

*Wanca v. Super Micro Computer, Inc.*,
    2018 U.S. Dist. LEXIS 107758 (N.D. Cal. June 27, 2018) ..................................6

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ...............................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................5

**Other Authorities**

Accounting Standards Codifications 606 ................................................................10

Robert B. Dickie & Peter Russo, Financial Statement Analysis and
    Business Valuation for the Practical Lawyer ch. 5 (3rd ed. 2020) ......................10

REPLY MEM. ISO DEFS.' MOTION TO DISMISS
Case No. 3:23-cv-01885-DMS-JLB

Defendants John Dobak and Kevin Sun ("Defendants") submit this reply brief in further support of their Motion to Dismiss Plaintiff's First Amended Consolidated Class Action Complaint [ECF 27-1 (brief)] ("Motion" or "Mot."), and in response to Plaintiff's Opposition to the Motion ("Opp."). ECF 31.[1]

# I.   ARGUMENT

## A.   Plaintiff's Allegations Fail to Support a Strong Inference of Scienter

### 1.   Defendants Did Not Offer Contradictory Explanations

Plaintiff contends that Defendants made "contradictory explanations" regarding the Medicare "code edits" during the Q2 2022 and Q3 2022 earnings calls, which purportedly "strongly support scienter." Opp. at 19. As support, however, Plaintiff offers only a litany of misinterpreted statements. *Id.* at 18-19. An honest examination of the actual statements reveals no such contradictions:

- During the Q2 2022 earnings call, DermTech disclosed it saw "pressure" from "ongoing Medicare billing impacts." Ex. 9 at 4. This pressure stemmed from "current" Medicare "code edits that reject[ed] claims where patients have multiple body sites tested on the same day," allowing reimbursement for only one test per date of service. ¶¶ 126-128; Ex. 9 at 7, 9. This differed from the Final LCD under which DermTech "should be paid now at least for 2 tests on the same date of service." Ex. 9 at 7. Commercial payers also were adopting these code edits, which created "some near-term pressure on ASP." *Id*. at 12. Medicare "didn't use these code edits when [DermTech] first got the contract," so the change was unexpected. *Id*. at 9.

- During the same call, Dobak disclosed that DermTech had "engaged" with Medicare, and that as a result, it expected "new insurance code edits to be adopted [by Medicare] in [Q4 2022] that would improve this issue." Ex. 9 at 4. Sun disclosed the new "code edit that we expect to occur in the fourth quarter" would revert to "actually match what the LCD approves," with DermTech being paid "at least for the first 2 body sites" without issue. *Id*. at 8-9. However, it was "hard to predict when [Medicare would] revert to the new code edits," making forecasting future ASP impacts challenging. *Id.*

---

[1] Defined terms have the same meaning as stated in the Motion. Also, Plaintiff has voluntarily dismissed original defendant DermTech, Inc. ECF 28.

Regardless, DermTech expected the future code edit "to update [and] to positively impact ASP through the rest of the year." *Id.* at 7.

- Sure enough, Medicare did implement the "<u>new</u>" code edits DermTech had predicted during the Q2 earnings call sometime before October 2022, and backdated the code edit to "when the [] LCD was first effective, which [was] January-February 2020." ¶ 135; Ex. 11 at 5. DermTech disclosed this change during the Q3 2022 earnings call. *See id.* The "<u>new</u>" code edits provided "some positive impact" to DermTech's ASP beginning in Q3 2022, presumably because it received reimbursement for tests for which it had been denied under the old (i.e., then "current") code edit. ¶¶ 246-247.

The above plainly shows there were <u>two different code edits</u> discussed by DermTech: (1) the "<u>current</u>" code edit that caused ASP pressure as of Q2 2022; and (2) the "<u>new</u>" code edits DermTech negotiated with Medicare that were implemented beginning in Q3 2022. The two are not the "same code edit," as Plaintiff suggests. Opp. at 18. Defendants made no "contradictory explanations"; Plaintiff's reading of their public statements is wrong, and they do not support any inference of scienter.

### 2. The Minimal Stock Sale Allegations Do Not Support Scienter

Notably, Plaintiff does not contest that: (1) Sun is not alleged to have sold <u>any</u> of his substantial DermTech holdings; (2) each stock sale by Dobak during the Class Period was <u>non</u>-discretionary; (2) Dobak's trades were in-line with his pre-Class Period trading activity; (3) Dobak and Sun <u>increased</u> their equity holdings over the course of the Class Period; and (4) Dobak's equity sales in the Class Period constituted less than 5 percent of his total DermTech holdings. Mot. at 15-17. These facts substantially cut against any inference of scienter, and create a very high bar for Plaintiffs to overcome.

Recognizing this difficulty, Plaintiff attempts to dissuade the Court from considering the <u>non</u>-discretionary nature of Dobak's stock sales, wrongfully claiming it is an "affirmative defense that can't be decided at the pleading stage." Opp. at 20-21. While Rule 10b5-1 provides an affirmative defense to claims by regulators, such as the SEC, alleging liability for insider "trading 'on the basis of' material nonpublic

2

information" (*Smilovits v. First Solar, Inc.*, 2019 U.S. Dist. LEXIS 221424, at \*10 (D. Ariz. Dec. 27, 2019) (quoting 17 C.F.R. § 240.10b5-1)), Plaintiff's claims are <u>not</u> based on illegal insider trading; rather, he is asking the Court to infer scienter under Section 10(b) based on Dobak's non-discretionary trading. ¶¶ 237-240.

To establish such an inference, Plaintiff must plead facts demonstrating that Dobak's sales were unusual or suspicious because they were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). At this stage, "[a]mong the relevant factors to consider are: (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id*. Thus, whether Dobak's sales were non-discretionary is a key factor in evaluating an insider's sales; in order to rebut the demanded scienter inference, courts routinely consider at this stage whether a defendant's trades were non-discretionary pursuant to established 10b5-1 plans or to satisfy tax withholding obligations. *See, e.g., Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n. 11 (9th Cir. 2008) (considering 10b5-1 plan); *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at \*17 (N.D. Cal. Nov. 23, 2021) (stock sales to satisfy tax obligations or pursuant to 10b5-1 plan "do not support a strong inference of scienter"). Because all of Dobak's sales during the Class Period were <u>non</u>-discretionary, <u>in-line</u> with his pre-Class Period trading activity, and he <u>increased</u> his equity holdings throughout the Class Period, Plaintiff has an exceptionally high bar to clear to obtain a strong inference of scienter, and fails to do so. *See In re Silicon Graphics Sec. Litig.*, 183. F.3d at 986.

### 3. Plaintiff's Newly-Asserted Core Operations Theory Fails

Seeking to rescue the CAC, Plaintiff alleges for the first time (<u>only in his brief</u>) a "core operations" theory of scienter. Opp. at 22. Courts applying the doctrine require

"plaintiffs to plead 'details about the defendants' access to information within the company' related to the fraud." *Fastly*, 2021 WL 5494249, at \*49 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008)). The Ninth Circuit limits application of the theory to three narrow types of claims, all predicated on non-conclusory allegations: (1) where a plaintiff's pleading suggests defendants had "actual access to the disputed information"; (2) where the "nature of the relevant fact is of such prominence that it would be absurd to suggest management was without knowledge of the matter"; and (3) when "read together" with other allegations "raise[s] an inference of scienter that is cogent and compelling." *S. Ferry*, 542 F.3d at 785-86.

But nowhere in the CAC are there any well-pleaded allegations that suggest Defendants: (1) had "exposure to factual information" that formed the basis of the purported misstatements; and (2) made misstatements related to the information in question. *Id.* Even the Opposition fails to identify with particularity the <u>factual information</u> to which Defendants purportedly had access; rather, Plaintiff waves his hand at "Medicare reimbursements" and "how many stickers were reimbursed per visit" without tying those theories to well-pleaded allegations in the CAC. Opp. at 22. This is for good reason as the CAC is utterly devoid of any such allegations. It contains no particularized allegations of information related to Medicare's reimbursement rate that (a) Defendants knew about (or should have known about given its prominence) but (b) chose to withhold from the market. *See S. Ferry*, 542 F.3d at 785-86. Moreover, Defendants' robust public discussions of Medicare reimbursement during the quarterly earnings calls in Q2 and Q3 of 2022, and the impact of changes to that reimbursement rate on DermTech's ASP, belies any application of the core operations theory.

### 4. The Former Employees' Allegations Lack Any Particularized Facts Regarding Defendants' Access to Information

Plaintiff fails to address the most glaring flaw concerning his reliance on the purported FEs as he fails to allege facts related to Defendants' statements that are

4

"themselves [] indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (citing *Sparling v. Daou*, 411 F.3d 1006, 1015-16 (9th Cir. 2005)). It is not enough for Plaintiff to allege generically that Defendants "had access to information." Opp. at 23.[2] He must tie the FEs' statements to Defendants' mental state, and the CAC's complete failure to take this basic step is fatal. *See In re Affirm Holdings, Inc. Sec. Litig.*, 2024 U.S. Dist. LEXIS 152940, at \*31-33 (N.D. Cal. Aug. 26, 2024). Plaintiff does not even allege that Defendants were aware of the purported "backlog of denied claims pending appeals," let alone that Defendants disregarded internal warnings concerning reimbursement rates. *See Zucco*, 552 F.3d at 999 (rejecting inference of scienter for statements from former employees that failed to establish management admitted or was aware of improprieties). The vast majority of the FEs allegations bear no relationship to the purported misstatements. These allegations thus create no inference of scienter at all, let alone the strong inference necessary to establish a claim under Section 10(b).

### 5.     Plaintiff Fails to Properly Plead a Motive to Meet Analysts' Expectations

The CAC contains <u>no</u> particularized allegations regarding Defendants' purported motive to meet Wall Street analysts' expectations. Mot. at 18-19. Absent such allegations that link Defendants' actions to a specific desire to meet analysts' expectations (there are none), Plaintiff's assertion of such a generalized motivation is a "routine business objective" that is far too common to support an inference of scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).

---

[2] At best, these allegations are conclusory. Plaintiff alleges FE2 stated "Sun 'signed off on any deal' involving reimbursement and was 'heavily involved in sales.'" ¶ 116. But he makes no effort to connect these conclusory hearsay allegations to <u>any</u> substantive part of the CAC, let alone identifying particularized allegations to establish that Sun had access to specific information on reimbursements or sales withheld from investors.

### 6. Defendants' SOX Certifications Are Not Probative of Scienter

Plaintiff erroneously asserts that Defendants' SOX certifications are probative of scienter. Not so. The certifications are not probative <u>unless</u> the CAC contains specific allegations establishing Defendants were "severely reckless in certifying the accuracy of the financial statements." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008). Plaintiff does not allege such particularized facts and, even if he had, DermTech's self-identification and disclosure—along with the remedial measures it took in 2022 to fix the material weakness—cut against any inference of fraud. *See Wanca v. Super Micro Computer, Inc.*, 2018 U.S. Dist. LEXIS 107758, at *15 (N.D. Cal. June 27, 2018). The CAC also lacks any well-pled allegations that suggests Defendants were deliberately reckless by not knowing about the weakness in internal controls. *See id.* Indeed, the CAC does not even plead that the material weakness identified had <u>any</u> impact on DermTech's financial performance. *See id.*

### 7. Plaintiff's Remaining Arguments Fail to Support a Strong Inference of Scienter

Plaintiff's remaining arguments concerning scienter fall flat for the reasons articulated in Defendants' Motion, namely, that DermTech's decision to raise capital through equity offerings do not establish scienter.[3] (Mot. at 18.) To the extent Plaintiff uses his brief to posit a <u>new</u> scienter theory (that "Dobak's replacement [as CEO] alone supports scienter") (Opp. at 23), it is <u>not found in the CAC</u>, which only notes that Dobak was replaced as CEO (¶ 169). Nothing in the CAC connects Dobak's resignation to any purported misstatement. *See M&M Hart Living Trust v. Glob. Eagle Entm't,*

---

[3] Plaintiff attempts to tie DermTech's <u>2024</u> bankruptcy to its <u>2021</u> ATM offering, stating that without the offering DermTech "would have been bankrupt even sooner than it was." Opp. at 21. This facile, ex post facto explanation is no substitute for well-pleaded allegations to establish that, <u>at the time of the 2021 ATM offering</u>, Defendants were motivated to commit fraud to raise capital at inflated prices. *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (noting all public companies want to maximize apparent profitability and maintain high share price afterwards).

6

*Inc.*, 2017 U.S. Dist. LEXIS 222201, at \*40 (C.D. Cal. Aug. 20, 2017) (particularized allegations must connect executive's departure to purported fraud).

### 8.    The CAC Otherwise Offers No Holistic View of Scienter

With each of Plaintiff's scienter theories falling apart under scrutiny, he lastly suggests that, when taken together, he has alleged "<u>at least</u> a tie" with respect to *Tellabs'* holistic view of scienter. Opp. at 24. This argument misunderstands *Tellabs'* holding, which is that taken together, a plaintiff's allegations "will survive . . . only if a reasonable person would deem the inference of scienter <u>cogent and at least as compelling</u> as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (emphasis added). An inference that Defendants intended to deceive investors must not be "less compelling than a competing inference of non-fraudulent intent." *Sharenow v. Impac Mortg. Holdings,* 385 Fed. Appx. 714, 717 (9th Cir. 2010). Plaintiff fails to allege facts that support any strong inference of scienter that overcomes more compelling non-fraudulent inference that: (1) Defendants accurately disclosed to the market what they then understood the Final LCD to cover; (2) DermTech operated under the Final LCD for two full years without issue; (3) Medicare issued code edits in early 2022 that altered reimbursement under the Final LCD and prevented DermTech from obtaining reimbursement for more than one test per day per patient; (4) Defendants promptly disclosed to the market the impacts of these code edits and the steps DermTech intended to take to fix the issue; (5) DermTech worked with Medicare to issue <u>new</u> code edits to fix this issue; and (6) the <u>new</u> code edits went into effect in late 2022 and DermTech immediately saw benefits as a result. (Mot. at 5-9, 12-14, 21-23). Plaintiff offers no cogent theory of scienter to overcome the more compelling, non-fraudulent, competing inference in Defendants' favor. *See Tellabs*, 551 U.S. at 324-325.

7

**B.      The CAC is Devoid of Well-Pleaded Allegations of Falsity**

**1.      Plaintiff Asserts No Well-Pleaded Allegations that the Final Medicare LCD Statements Were False When Made**

The Motion discussed the factual background behind the Final Medicare LCD Statements, including what the MAC disclosed at the time it approved the Final LCD. *See* Mot. at 5-6. The Motion discussed how DermTech operated under the Final LCD for over two years without issue, *id.* at 6, and how Medicare code edits later rolled out in early 2022 differed from the prior two years, *id.* at 6-8, because falsity is measured by whether challenged statements were <u>materially false or misleading *when they were made*</u>, given the totality of information then known. *See In Re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1217 (N.D. Cal. 2000), *aff'd*, 283 F.3d 1079 (9th Cir. 2002).

Plaintiff attempts a sleight of hand by suggesting that what Defendants <u>knew at the time</u> of the challenged statements cannot be considered at this stage, and that "knowledge is not an element of falsity." Opp. at 10-14. He does so for a clear reason – to try to shift the Court's focus away from the fact that, <u>on its face</u>, the CAC contains no well-pleaded allegations that establish the challenged Final Medicare LCD Statements were "materially false or misleading when made." *Lowe v. Tandem Diabetes Care Inc.*, 2024 U.S. Dist. LEXIS 79006, at *32-33 (S.D. Cal. Apr. 29, 2024). Put another way, Plaintiff tries to evade his burden: "Falsity is alleged when a plaintiff points to the defendant's statements that <u>directly contradict what the defendant knew at that time</u>." *Victor J. NG v. Berkeley Lights, Inc.*, 2024 U.S. Dist. LEXIS 28776, at *15 (N.D. Cal. Feb. 20, 2024) (granting motions to dismiss) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018)) (emphasis added). The publicly available comments and responses between the MAC and DermTech gives important context to the critical part of this analysis – "what [Defendants] knew at th[e] time" of

8

the challenged statements.[4] *Id.* What Defendants knew is that the MAC publicly confirmed it would "cover up to 2 PLA tests per date of service without an appeal." (Ex. 2 at 21). This is not Defendants' "own false statements" (Opp. at 11) and they were not materially false or misleading when made given what the MAC disclosed. *See In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d at 1217. There is no direct contradiction between what Defendants knew about the MAC's decision to "cover up to 2 PLA tests per date of service without an appeal" and their public statements. *See Berkeley Lights, Inc.*, 2024 U.S. Dist. LEXIS, at *15. Events that took place more than two years after the approval of the Final LCD have no bearing upon whether the challenged statements were false when made. *See In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d at 1217.[5]

### 2.    Defendants' Statements Regarding "Main Drivers" Did Not Create an Impression Materially Different From Reality

Plaintiff suggests that DermTech's statements regarding the "main drivers of ASP growth," namely, "sales mix, broader payer coverage, [and] success with appeals and generation of data" were misleading because one component of those three – "broader payer coverage" – was "directly influenced by how many tests each patient used at each visit." Opp. at 15. In other words, Plaintiff demands DermTech disclose a sub-component of one of the main drivers of ASP growth. This request smacks of a demand for completeness, which is not required by Section 10(b). *See Brody v.*

---

[4] Plaintiff falsely states that Defendants "concede falsity for their LCD statements" (Opp. at 10), "cite only to their own false statements" to argue the challenged statements regarding the Final Medicare LCD were not false (*Id.* at 11), and that Defendants also purportedly admit "they did not know what the Final LCD actually said" (Opp. at 11-12). These are blatant mischaracterizations of Defendants' arguments. At no point did Defendants concede falsity. Notably, Defendants cite the MAC's statement regarding its willingness to cover "up to 2 PLA tests per date of service without an appeal" as the reason why Plaintiff does not establish falsity. (Mot. at 5, 23). And nowhere in the Motion do Defendants claim they "did not know" what the Final LCD said. The Court should ignore Plaintiff's unsupported smears.

[5] If anything, that Medicare made "new" code edits in October 2022 that "would actually match what the LCD approves" (Ex. 9, at 7), and then Medicare backdated the new code edits to "when the Medicare LCD was first effective, which is January-February 2020" (¶ 135), suggests Defendants' statements were accurate when made.

9

*Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). DermTech did not create the impression that whether Medicare reimbursed it for the DMT was unimportant or otherwise not something that <u>also</u> drove ASP, nor did DermTech's statements intimate a different reality than existed. *See id.*

### 3.   Statements Concerning the 2022 Reclassification and the Downward Revenue Adjustment Were Not False

Plaintiff theorizes that his allegation that the 2022 Reclassification and the Downward Revenue Adjustments were "restatements" in fact makes them "restatements," as that term is understood in the Section 10(b) parlance. Opp. at 16. But <u>DermTech never restated its financial statements at any point throughout the Class Period</u>, nor did it admit <u>any</u> accounting errors. As demonstrated, what DermTech engaged in were routine accounting measures disclosed to investors well in advance. *See* Mot. at 12-14 (discussing Downward Revenue Adjustments); 19-20 (discussing 2022 Reclassification). Contrary to Plaintiff's assertion, the 2022 Reclassification did not reclassify deferred revenue "from an asset to a liability" (Opp. at 17); <u>deferred revenue already is a liability for any company applying GAAP</u>.[6] In this Circuit, even an <u>actual</u> restatement of a company's financials is not, by itself, sufficient to establish falsity without alleging that the actions violated GAAP or otherwise constituted an accounting error. *See In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1066 (N.D. Cal. 2002). Plaintiff makes no such allegation here. Plaintiff's bald assertion that the Court should treat DermTech's anticipated adjustments as a "concession" of falsity has no support anywhere in the case law of this Circuit or others. Opp. at 16-17.

## II.   CONCLUSION

Defendants respectfully request that the Court grant the Motion.

---

[6] *See, e.g.,* Accounting Standards Codification 606; Robert B. Dickie & Peter Russo, Financial Statement Analysis and Business Valuation for the Practical Lawyer ch. 5 (3rd ed. 2020).

10

Dated: September 23, 2024

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC

By */s/Sean T. Prosser*
    Sean T. Prosser
    Attorneys for Defendants

11

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On September 23, 2024, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registered users.

Executed on September 23, 2024 at San Diego, California.


/s/Sean T. Prosser
Sean T. Prosser

521113012v.8

12

REPLY MEM. ISO DEFS.' MOTION TO DISMISS
Case No. 3:23-cv-01885-DMS-JLB