Sean T. Prosser (SBN 163903)
stprosser@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA  92130
Telephone:   (858) 314-1500
Facsimile:    (858) 314-1501

Patrick E. McDonough (*Pro Hac Vice* application forthcoming)
pemcdonough@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
One Financial Center
Boston, MA  02111
Telephone:   (617) 542-6000

Attorneys for Defendants
JOHN DOBAK and KEVIN SUN

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DERMTECH, INC. SECURITIES LITIGATION | Case No. 3:23-cv-01885-DMS-JLB<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>DATE:      June 6, 2025<br>TIME:       1:30 p.m.<br>CTRM.:     13A<br>JUDGE:     Hon. Dana M. Sabraw |

i

# **TABLE OF CONTENTS**

I.    ARGUMENT..................................................................................................1

    A.    Defendants' Signatures on SEC Filings Do Not Support Scienter........1

    B.    Dobak's Planned Stock Sales Do Not Create An Inference of Scienter..................................................................................................3

    C.    Defendants Did Not Make Conflicting Statements Regarding Code Edits, and No "Half Truths" Support Scienter. ..........................5

    D.    DermTech Did Not Violate GAAP and Its Financial Statements Were Not Misleading. ........................................................................5

    E.    Plaintiff's New Core Operations Theory Fails to Establish Scienter..................................................................................................7

    F.    Plaintiff Fails to Improve Other Rejected Scienter Arguments............8

    G.    A Holistic Assessment of Scienter Does Not Save the SAC...............9

    H.    The Safe Harbor Applies to DermTech's Forward-Looking Guidance................................................................................................10

II.    CONCLUSION .........................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Cozzarelli v. Inspire Pharms.*, 549 F.3d 618 (4th Cir 2008) .....................................4

*Curry v. Yelp Inc.*, 875 F.3d 1218 (9th Cir. 2017).......................................................4

*DSAM Glob. Value Fund v. Altris Software, Inc*., 288 F.3d 385 (9th Cir. 2002) .....6

*Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008).......................8

*In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010) ...........................................10

*In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249 (N.D. Cal. Nov. 23, 2021)............4

*In re Hansen Nat. Corp. Sec. Litig*., 527 F. Supp. 2d 1142 (C.D. Cal. 2007)..passim

*In re Silicon Graphics Sec. Litig*., 183 F.3d 970 (9th Cir. 1999) .............................3

*In re Vantive Corp. Sec. Litig*., 283 F.3d 1079 (9th Cir. 2002)........................2, 3, 4

*Lloyd v. CVB Fin. Corp*., 811 F.3d 1200, 1207 (9th Cir. 2016)...........................6, 7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008)....4

*S. Ferry LP No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ...................................7

*Sharenow v. Impac Mortg. Holdings,* 385 Fed. Appx. 714 (9th Cir. 2010)............10

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)...................8

DEFS.' REPLY BRIEF ISO MOTION TO DISMISS SAC
Case No. 3:23-cv-01885-DMS-JLB

Defendants John Dobak and Kevin Sun ("Defendants") submit this reply in support of their Motion to Dismiss (the "Motion") Plaintiff's Second Amended Consolidated Class Action Complaint ("SAC" or "¶ __") and in response to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp.").

## I.    ARGUMENT

### A.    Defendants' Signatures on SEC Filings Do Not Support Scienter.

Plaintiff asserts that Defendants' opening brief "ignored" a "key section" of his allegation that changes to certain language in DermTech's SEC filings support a finding of scienter (Opp. at 4-7) but this is wrong. The face of the challenged SAC itself fails to state how the SEC filings support any basis for scienter. *See* ¶¶ 191-221.[1]

Plaintiff argues without foundation that the 2021 10-K "supports an inference of both purposeful conduct and knowledge." Opp. at 5. But the law is clear that Dobak's and Sun's signatures on SEC filings—absent more—cannot lawfully establish fraudulent culpability per se. Such an argument erroneously collapses **two distinct inquiries** the Court must make (falsity and scienter) into one, which is not the law in this Circuit. Instead, Courts in the Ninth Circuit have explicitly rejected Plaintiff's exact argument, noting that if a signature on a public filing containing misstatements alone gave rise to a strong inference of scienter, it would "eviscerat[e] the pleading requirements for scienter set forth in the PSLRA" and establish scienter in every case in which a misstatement was found in a SEC filing. *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159 (C.D. Cal. 2007). Instead, Plaintiff must separately establish both falsity and scienter using allegations that meet Rule 9(b) and the PSLRA's heightened pleading standards. Put simply, Plaintiff must plead specific facts that independently establish that not only did Defendants make the misstatements in question (which could be satisfied with filing signatures), **but also** that they each knew their representations "were false or misleading when made, if they were so[;] or that

---

[1] Notably, Plaintiff's fail to cite *any* specific paragraph *in the SAC* where he asserts DermTech's SEC filings create an inference of scienter. Opp. at 4-7.

1

Defendants acted in deliberately reckless disregard of their truth or falsity." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1089 (9th Cir. 2002). A signature on an SEC filing may get Plaintiff halfway but he still fails to plead specific ***factual*** allegations to fill the glaring scienter holes that this Court previously identified.

An executive's signature on an SEC filing does not establish scienter. *In re Hansen*, 527 F. Supp. 2d at 1160 (signatures on SEC filings "alone do[] not give rise to a strong inference of scienter"). "Without any corroborating facts, it is impossible to conclude that such allegations rest on more than hindsight speculation." *Id*. at 1155 (quoting *Vantive*, 283 F.3d at 1089). Plaintiff fails to plead any facts evidencing Defendants' knowledge of the purported falsity of statements in the SEC filings that ***predate*** the Company's corrective disclosures starting in Q2 2022. The SAC lacks a single allegation that suggests—let alone establishes—that Defendants knew any SEC filing contained conflicting information regarding the scope of the Final LCD. It even lacks the common conclusory allegation that Defendants took part in the preparation of DermTech's filings. Plaintiff cites no contemporaneous facts whatsoever—no confidential witnesses, no internal reports, not even a single statement attributed to either Defendant prior to the corrective disclosures—to satisfy his burden. *See Hansen*, 527 F. Supp. 2d at 1159-60 ("Without allegations that each of the Defendants that signed various … public filings ***knew*** those public filings contained misstatements, Defendants' signatures on those public filings does not give rise to a strong inference of scienter.").[2]

---

[2] *See also Khoja v. Orexigen Therapeutics, Inc*., 2019 WL 4599882, at *20 (S.D. Cal. Sept. 23, 2019) (granting motion to dismiss as to executive where plaintiff alleged SEC filing contained misstatements regarding a meeting but complaint contained no allegations defendants attended the meeting or received information concerning it or what was discussed). *Cf. United Ass'n Nat'l Pension Fund v. Carvana Co*., 759 F. Supp. 3d 926, 973 (D. Ariz. 2024) ("[M]erely signing" SEC filing does not give rise to strong inference of scienter "unless there are allegations that the defendants knew of the alleged misstatements contained within the SEC filings.")

2

While DermTech's description of the Final LCD differed in one SEC filing, simply signing filings does not infer that either Defendant *knew* the language therein was false, which is Plaintiff's burden to establish. *See Hansen*, 527 F. Supp. 2d at 1159-60. The SAC is ***devoid of any contemporaneous facts*** suggesting either Defendant: (1) "wanted to hide" facts regarding the Final LCD (Opp. at 5); (2) directed the changes in the language of the SEC filing or even knew about the changes at the time they were made (*id*. at 6-7); and (3) "had contemporaneous knowledge of the falsity of his statement." (*Id*. at 7). There are no facts pled in "great detail [] that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Sec. Litig*., 183 F.3d 970, 974 (9th Cir. 1999).

**B.      Dobak's Planned Stock Sales Do Not Create An Inference of Scienter.**

The SAC fails to correct the various infirmities the Court previously identified when it determined that Dobak's programmatic sales do not create a strong inference of scienter. ECF 36 (Order) at 19-21. First, Plaintiff argues that Dobak's sales were suspicious because he sold 22.1% of shares "he held as of the first day of the Class Period." Opp. at 8. *See Vantive*, 283 F.3d at 1092 (first factor of analysis of suspicious insider sales is amount and percentage of shares sold by insiders). Yet Plaintiff cites no authority that his "percentage-of-shares analysis" mandates assessment ***only*** as of the start of the Class Period. The reason for Plaintiff's obfuscation is apparent, as any reasonable examination of Dobak's holdings reveal he ***increased*** his shares across the Class Period, from 543,071 shares as of March 8, 2021 to 698,693 on March 13, 2023, ***an increase of nearly 29%*** over two years even accounting for sales. *Compare* ECF 41-19 (Ex. 17) at p. 154 *with id.* at p. 165. The amount and percentage of Dobak's sales create no inference of scienter.[3] *Cf. Cozzarelli v. Inspire Pharms.*, 549 F.3d 618, 628

---

[3] Plaintiff's continued assertion of an artificially long Class Period (112 weeks) further cuts against scienter because "lengthening the class period has allowed the plaintiffs to sweep as many stock sales into their totals as possible, thereby making the stock sales appear more suspicious than they would be with a shorter class period." *Vantive*, 283

3

(4th Cir 2008) (increase in executive's holdings "hardly suggest[s] that the defendants sought to dump their shares at an inflated price").

Moreover, because Dobak substantially increased his holdings by the end of the Class Period, he suffered significant losses in equal proportion to all investors—including Plaintiffs—due to the decline in DermTech's share price, which defeats any inference of scienter. *Hansen*, 527 F. Supp. 2d at 1160 ("[A]ny inference of scienter is defeated when an insider sells only a portion of his stock holdings and ends up reaping the same large losses as did Plaintiff when the stock price dropped." (internal quotations omitted)).

Plaintiff also incorrectly argues that the programmatic nature of Dobak's sales cannot be considered at this stage to rebut scienter inferences drawn from the timing of sales. *See* Opp. at 9. The Ninth Circuit is clear that "[s]ales according to pre-determined plans may rebut [] an inference of scienter" at the motion to dismiss stage. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n. 11 (9th Cir. 2008).[4] Because stock trades made pursuant to preexisting plans "allow[] for stock sales over a predetermined period without concern for the market," such sales undercut any inference that defendants timed corporate stock sales to capitalize on artificially inflated stock prices or on insider information. *See Curry v. Yelp Inc.*, 875 F.3d 1218, 1226 n. 2 (9th Cir. 2017). As this Court already determined, the data contained in

---

F.3d at 1092. Choosing an artificially long class period in the absence of strong allegations concerning insider sales cuts against any inference of scienter. *See Hansen*, 527 F. Supp. 2d at 1160. As this Court previously noted, "[w]hen the [c]lass [p]eriod is long, it becomes difficult to see how particular stock sales would strengthen allegations that particular statements were uttered with deliberate recklessness at the times they were made." ECF 36, at 20.

[4] Courts routinely consider the non-discretionary nature of insider sales to rebut any inference of scienter. *See, e.g., Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n. 11 (9th Cir. 2008) (considering 10b5-1 plan); *Elec. Workers Pension Fund Local 103, IBEW v. HP, Inc.*, 2021 WL 1056549, at *20-21 (N.D. Cal. Mar. 10, 2021) (stock sales rebutted inference of scienter because were "made to either satisfy tax obligations or according to a 10b5-1 plan"); *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *17 (N.D. Cal. Nov. 23, 2021) (stock sales to satisfy tax obligations or pursuant to 10b5-1 plan "do not support a strong inference of scienter").

4

Dobak's Form 4s is not used to establish an affirmative defense, as Plaintiff suggests, but to "show that Plaintiff has not pleaded sufficient factual content to meet an element of his § 10(b) claim," namely, that Dobak's sales were suspicious. ECF 36, at 5. The SAC fails to link any Dobak sales to misstatements he allegedly made, as required for a scienter inference to be drawn regarding timing. *Hansen*, 527 F. Supp. 2d at 1161.

**C.     Defendants Did Not Make Conflicting Statements Regarding Code Edits, and No "Half Truths" Support Scienter.**

Plaintiff next argues this Court was patently wrong when it previously decided that Defendants' explanations of multiple code edits during the Q2 2022 earnings call was ***not indicative*** of scienter. ECF 36, at 23-24; Opp. at 14-17 (arguing the Court wrongly credited Defendants' explanation). The SAC offers no new allegations to remedy this deficiency, and the Court's well-reasoned earlier decision still applies.

Plaintiff instead harps on the lack of purported changes to the various Medicare LCDs applicable to the DMT and asserts this establishes Defendants lied to investors during the Q2 2022 earnings call when they posited that future CMS ***code edits*** would rectify existing issues caused by new Medicare code edits impacting the business in Q2 2022. *See* Opp. at 14-17. Simply put, a plain language reading of Dobak's and Sun's comments during the Q2 2022 earnings call establishes both were discussing "code edits," an administrative function wholly different from the LCD. *See* ECF 41-1, at 5-6. Defendants were clear that recent ***code edits*** caused ASP pressure during Q2 2022, and that CMS intended to make "***new*** insurance code edits" in Q4 2022 that would improve the issue. ECF 41-1, at 5-6. Plaintiff's focus on the LCD is both unavailing and irrelevant, and creates no compelling inference of scienter. Plaintiff's suggestion that Defendants raised "contradictory" explanations is baseless.

**D.     DermTech Did Not Violate GAAP and Its Financial Statements Were Not Misleading.**

Plaintiff's assertion that DermTech's purported GAAP violations support his scienter argument must start and end with the following undisputed facts: DermTech

did not violate GAAP accounting standards; it never issued a restatement of financials based on a failure to follow GAAP; and no auditor ever determined or advised that its accounting policies violated GAAP. *See generally* SAC. Simply put, DermTech never published incorrect financial statements. But even if it had, "mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir. 1994)). To raise a strong inference of scienter, the SAC must contain facts demonstrating Defendants "knowingly and recklessly engaged in an improper accounting practice," such as where an external auditor counseled against a practice. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016).

Not only does the SAC contain no allegation that KPMG (DermTech's independent auditor) counseled against its revenue recognition policies, but judicially noticeable public records rebut such a conclusion. KPMG instead certified in each of the 2020, 2021, and 2022 10-Ks that "[i]n our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company . . . ***in conformity with U.S. generally accepted accounting principles.***" *See* Supplemental Declaration of Sean Prosser in Support of Defendants' Motion to Dismiss ("Prosser Dec."), Exs. 22-24.[5] In other words, KPMG independently determined DermTech's accounting ***complied with GAAP***. *See Hansen*, 527 F. Supp. 2d at 1158 (outside auditor's unqualified opinion of GAAP compliance "highly probative of an absence of scienter"). Moreover, KPMG identified the issue of "measurement of assay revenue" as a "Critical Audit Matter" involving KPMG's

---

[5] Exhibits 22-24 that are included with the Supplemental Prosser Declaration are additional excerpts from DermTech's SEC filings previously filed in support of Defendants' Motion [ECF 41-2, ¶¶ 2, 8 & 14] and subject to the Request for Judicial Notice ("RJN"). ECF 41-24. The Court should take judicial notice of these excerpts for the reasons addressed in the RJN. Citations to the Supplemental Prosser Declaration are cited as "Ex. --."

6

"especially challenging, subjective, or complex judgment[]," and specifically audited DermTech's "measurement of assay revenue, *specifically the estimate of revenue expected to be collected*" as part of its annual work. Exs. 23, 24. KPMG conducted extensive testing of DermTech's assay revenue recognition:

> The following are the primary procedures we performed to address this critical audit matter. For a sample of tests performed in the current period, we evaluated the claims included within the Company's assay revenue recognition model by comparing them to certain relevant documentation, including test requisition forms, test results, payor contracts, and proof of delivery to the physician. For a sample of payments received in the current period, we evaluated the payments included within the Company's assay revenue recognition model by agreeing them to payments received. We tested the accuracy of the Company's assay revenue recognition model, which includes the collection history used by management in assessing the current period revenue realization percentages, by payor. We performed a sensitivity analysis over the estimated revenue realization percentages applied to each payor group, using actual collection history, to assess its impact on the Company's measurement of assay revenue. We further evaluated the estimate of assay revenue expected to be collected by inquiring of individuals of the Company responsible for monitoring and tracking the status of collections and developing the estimate.

Exs. 23, 24. After this heightened scrutiny on assay revenue measurement, KPMG *still* found DermTech's accounting practices complied with GAAP each year. *Id*. No inference of scienter should apply. *Lloyd*, 811 F.3d at 1207.

Plaintiff's unsupported conclusory allegation that DermTech's financial statements were "not consistent with GAAP" and "thus presumed misleading" (Opp. at 20) fails to support any inference of scienter in light of KPMG's independent assessment and Plaintiff's utter failure to plead any facts indicating that Defendants knowingly or recklessly engaged in an improper accounting practice.

**E.      Plaintiff's New Core Operations Theory Fails to Establish Scienter.**

Plaintiff argues that it "would be absurd to suggest" that management was "unaware of whether one or two stickers per visit were covered by Medicare," purportedly because "Medicare reimbursements" drove the Company's revenue. Opp. at 12-13. *But the SAC does not contain any specific allegation regarding the importance of Medicare reimbursement on revenue*. Plaintiff's bare speculative conclusion that Medicare reimbursements were so critical to the Company that it would be "absurd" to consider that Dobak or Sun were unaware finds no support in the SAC. Scienter is not supported by the core operations theory. *S. Ferry LP No. 2 v. Killinger*, 542 F.3d 776, 786-86 (9th Cir. 2008) (requiring "nature of the relevant fact [be] of such prominence that it would be absurd to suggest management was without knowledge").

**F.     Plaintiff Fails to Improve Other Rejected Scienter Arguments.**

Plaintiff simply repeats rejected arguments concerning other indicia of scienter:

- DermTech's Equity Offerings Do Not Support Scienter [Opp. at 10; *contra* MPA at 13]. As the Court noted, "routine business objectives" like raising capital "cannot normally be alleged to be motivations for fraud." ECF 36, at 21 (quoting *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002). The SAC offers no new allegations rebut Defendants' compelling opposing inference.

- Dobak's Resignation Does Not Support Scienter [Opp. at 11; *contra* MPA at 13-14]. Plaintiff fails to address the absence of facts tying Dobak's resignation to any purported misstatement, as required. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). The Court should not credit Plaintiff's argument.

- Defendants' SOX Certifications Do Not Support Scienter [Opp. at 11; *contra* MPA at 15]: Plaintiff does not address the SAC's lack of any allegations suggesting Defendants were "severely reckless in certifying the accuracy of the financial statements." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008). The Court should not depart from its previous determination that it "gives no weight" to Plaintiff's unsupported allegations concerning the same. ECF 36, at 27.

- Analyst Estimates Do Not Establish Scienter [Opp. at 11-12; *contra* MPA at 5]. Plaintiff's recycled argument and conclusory allegations that DermTech was motivated to overstate revenue to appease analysts adds nothing to support changing the Court's original determination that "general allegations of motive to commit fraud do not create a strong inference of scienter." ECF 36, at 24. In fact, Plaintiff recognizes the SAC failed to address this glaring lack of specific allegations. Opp. at 12 (raising argument only for preservation).

- Access to Information Theory Fails to Establish Scienter [Opp. at 13-14; *contra* MPA at 17-18]: Plaintiff fails to address his failure to plead specific *contemporaneous* facts that establish Dobak's and Sun's access to the information claimed. Instead, he relies on statements made in *later* corrective disclosures to suggest historical knowledge, ignoring the more plausible likelihood that Dobak and Sun educated themselves with new or different information for the Q2 2022 earnings call. MPA at 18.

8

## G.    A Holistic Assessment of Scienter Does Not Save the SAC.

The SAC fails to remedy the glaring issue this Court already highlighted when assessing scienter holistically under *Tellabs*: namely, "nearly all of Plaintiff's scienter allegations contain minimal factual content," and their combination still lacks teeth and falls short of the innocent explanation that, upon learning of the Final LCD's limitation to one test per visit, Defendants disclosed this information to the market and sought to resolve the issue." ECF 36, at 31-32. Plaintiff instead suggests he has pled a "different set of facts" to suggest DermTech intentionally hid the truth about the Final Medicare LCD from the public. Opp. at 18-19. *This is false*. Plaintiff's bluster **ignores** *his own allegations* that CMS/Medicare CPT codes and LCDs work in concert to facilitate reimbursement for the DMT test, and each serve separate administrative functions for DermTech. Plaintiff ignores the fact that Dobak and Sun clearly reference the code edits when alerting investors what had changed, **not** the LCD. ECF 41-2, Ex. 9 at 3, 6-8 &12; ¶ 121. Plaintiff's references to "subtle changes" to the 2021 10K language is similarly unavailing absent **any specific allegations** that Dobak and Sun were aware of, yet chose not to disclose, Medicare's reimbursement rate for multiple tests run on a single day. As it was for the FAC, the more compelling inference remains:

- DermTech operated under the Final Medicare LCD and applicable CPT codes without issue throughout 2020 and 2021 insofar as it had no issues obtaining full reimbursement for two or fewer tests run per day per patient without an appeal;

- CMS/Medicare implemented a new code edit in late 2021 or early 2022 that restricted DermTech's ability to obtain reimbursement for more than one DMT test per day;

- Some private insurers chose to adopt these new CMS code edits when processing the DMT, which further pressured DermTech's reimbursements;

- DermTech recognized this impact beginning in Q2 2022, and promptly disclosed it to investors and worked with CMS/Medicare to implement new code edits to fix the issue;

- CMS/Medicare *did* issue new code edits to allow DermTech to receive reimbursement for two tests per day per patient without any appeal; and

9

- DermTech began recognizing positive impacts from those code edits beginning in Q3 2022, and by the end of Q3 2022, DermTech was receiving full reimbursement for tests run on the "first two bodysites for pretty much any plan at this point."

This innocent explanation is more plausible given the lack of any well-pled factual allegations to the contrary. *Sharenow v. Impac Mortg. Holdings,* 385 Fed. Appx. 714, 717 (9th Cir. 2010) (inference that defendants intended to deceive investors must not be "less compelling than a competing inference of non-fraudulent intent").

**H.      The Safe Harbor Applies to DermTech's Forward-Looking Guidance.**

Plaintiff misstates the law regarding the PSLRA Safe Harbor. He suggests it does not protect DermTech's full-year guidance issued in May 2022 because it included "several months for which revenue had already been prematurely booked (i.e. January through April), thus making the statements partially false when made." Opp. at 24. First, DermTech's auditor KPMG opined that the 2022 financial statements (including "January through April") *complied with GAAP in all respects* so Plaintiff's "prematurely booked" allegation cannot be credited. Second, Plaintiff suggests Sun's use of the word "trend" to analyze what DermTech had seen regarding the proportion of multiple tests per day establishes that "the January through April contribution to DermTech's annual revenue guidance was false when made." Opp. at 24. ***This is wholly unsupported***. The SAC identifies no facts whatsoever for Plaintiff's speculation that the use of "trend" establishes (or even suggests) that Sun had "actual knowledge that [the 2022 guidance] was false or misleading" when it was issued, as is Plaintiff's burden to rebut the PSLRA's exemption for forward-looking statements. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010). Plaintiff offers nothing more than rank speculation.

**II.      CONCLUSION**

For the reasons herein and the reasons raised in Defendants' Memorandum of Points and Authorities in support of the Motion, Defendants respectfully request that the Court grant the Motion and dismiss Plaintiff's SAC.

Dated:  May 21, 2025

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC

By      */s/ Sean T. Prosser*
Sean T. Prosser

Attorneys for Defendants
John Dobak and Kevin Sun

11

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On May 21, 2025, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registered users.

Executed on May 21, 2025 at San Diego, California.

/s/ Sean T. Prosser
Sean T. Prosser

DEFS.' REPLY BRIEF ISO MOTION TO DISMISS SAC
Case No. 3:23-cv-01885-DMS-JLB